In the Matter of Joseph Arthur FOWL-
ER, d/b/a Kaw Lake Cement and
Fowler Construction Company, Bank-
rupt.

Betty McMILLIN, Trustee, Appellant,

v.

FIRST NATIONAL BANK & TRUST
COMPANY OF PONCA
CITY, Appellee.

No. 74–713.

United States District Court,
W. D. Oklahoma,
Bankruptcy Division.

Nov. 21, 1975.

**800**

B. J. Brockett, Oklahoma City, Okl., for appellant.

J. E. Burns, Ponca City, Okl., for appellee.

DAUGHERTY, Chief Judge.

This is an appeal from an order of the Bankruptcy Court denying Appellant's application to reclaim a security interest in a portion of the Bankrupt's personal property. Jurisdiction is founded upon 11 U.S.C. § 67(c). The appeal is taken pursuant to Bankruptcy Rules 801–814.

Appellant is Trustee in Bankruptcy. Joseph Arthur Fowler is the Bankrupt. Appellee, the First National Bank & Trust Company of Ponca City, Oklahoma, is one of the Bankrupt's creditors. Appellee claims a prior security interest in certain personal property, intangibles and proceeds belonging to the Bankrupt. Appellant seeks to cut off this security interest on the grounds that a financing statement filed by Appellee to perfect this interest was formally insufficient under Oklahoma's version of the Uniform Commercial Code (U.C.C.).

■ Under Bankruptcy Rule 810 this Court on appeal may affirm, modify, reverse or remand a judgment or order of a Bankruptcy Judge. The Court shall accept the findings of fact of a Bankruptcy Judge unless they are clearly erroneous. The facts of this case are not in dispute and are adequately stated by the Bankruptcy Judge's findings of fact. These findings are as follows:

"1. The debtor, Joseph Arthur Fowler, prior to November 3, 1971, and until the filing of his petition in bankruptcy, was engaged in the paving construction business, usually under the trade name of Fowler Construction Company.

2. In July, 1971, Jerry Fowler, the debtor's son, commenced the business of selling ready mixed concrete under the trade name, Kaw Lake Cement.

3. On November 3, 1971, the First National Bank and Trust Company of Ponca City, Oklahoma, filed of record in Oklahoma County a financing statement which showed in the space under the name of the debtor the following:

Kaw Lake Cement
Jerry A. Fowler & J. A. Fowler
Kaw City, Oklahoma,

which financing statement was signed:

Jerry A. Fowler
J. A. Fowler

4. In July, 1972, Joseph Arthur Fowler formed a partnership with his son, Jerry A. Fowler, by buying into the as-

sets of Jerry A. Fowler's business and the partnership did business under the name of Kaw Lake Cement.

5. On April 6, 1973, Kaw Lake Cement executed and delivered to the First National Bank and Trust Company, Ponca City, Oklahoma, a security agreement securing an indebtedness to the Bank in the amount of one hundred sixty thousand dollars ($160,000.00), and upon which was pledged the assets of Kaw Lake Cement and certain equipment of the debtor, J. A. Fowler. The pledged equipment is listed in Exhibit A to the Complaint of the trustee and has a present value of approximately forty thousand dollars ($40,000.00).

6. On April 13, 1973, the Bank filed with the County Clerk of Oklahoma County a financing statement which, under the name of the debtor, has the following:

KAW LAKE CEMENT
Fowler, J. A., Partner
Fowler, Jerry A., Partner

and in which the body of the instrument contains the following language:

'All machinery . . . belonging to J. A. Fowler Concrete Construction Company, Ponca City, Oklahoma, . . .,'

and which is signed as follows:

KAW LAKE CEMENT
Jerry A. Fowler, Partner
J. A. Fowler, Partner"

The Bankruptcy Judge concluded:

"The financing statement of November 3, 1971, when taken together with the financing statement of April 13, 1973, meets the statutory requirements for financing statements and gave notice of the existence of the Bank's security agreement in the controverted equipment.

The filed financing statements of November 3, 1971 and of April 13, 1973 fairly put on notice any prudent examiner that he should check with the instant bank as to a possible security interest in the debtor's equipment inasmuch as the clerk indexing included 'J. A. Fowler' and such inquiry would have led to a confirmation of the bank's security agreement in the debtor's equipment."

Appellant's statement of issues to be raised on appeal is as follows:

(1) Is the filing and indexing of a financing statement under the name "KAW LAKE CEMENT", a fictitious trade name of a partnership between the Bankrupt and his son, sufficient to perfect a security interest in personal property owned by the Bankrupt and used by him in another business totally unrelated to the partnership?

(2) May two financing statements filed by a secured party, each of which is lacking all of the formal requisites of a financing statement, so that either one of the financing statements, standing alone, would be insufficient to perfect a security interest as against a Trustee in Bankruptcy, be construed together as one sufficient filing?

(3) Is the filing officer required to index according to the "signature" placed on the financing statement by, or on behalf of the debtor, or in accordance with the "name" of the debtor as furnished by the secured party?

See Bankruptcy Rule 806.

Appellee contends that either of the involved financing statements standing alone is sufficient to create a valid security interest prior in time and right to the rights of the Appellant. Appellee further adopts the position of the Bankruptcy Judge.

I

The gist of Appellant's argument under her first appellate issue is that Appellee's financing statements are insufficient under 12A Oklahoma Statutes § 9–402 to perfect a security interest in the Bankrupt's equipment as the manner in which the debtors are designated therein led the filing officer to file and index the financing statements only under the trade name of the debtor, Kaw Lake Cement, and not under his true name, Joseph Arthur Fowler. The gist of Appellee's response is that it gave all re-

quired information on its financing statements and it is not responsible if the filing officer failed to properly file and index the financing statements.[1]

12A Oklahoma Statutes § 9–402(1) sets forth the formal requirements for financing statements:

"A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items of collateral. . . ."

12A Oklahoma Statutes § 9–402(5) reads:

"A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."

■■■ The notice filing system provided by the Uniform Commercial Code requires that a secured party, in order to perfect his security interest in collateral, provide for public record enough information to alert an interested party that there may be a prior security interest in that collateral. *In Re Colorado Mercantile Co.,* 299 F.Supp. 55 (D.Colo.1969); *In Re Excel Stores, Inc.,* 341 F.2d 961 (Second Cir. 1965); *Owen v. McKesson and Robbins Drug Company,* 349 F.Supp. 1327 (N.D.Fla.1972). Perfect accuracy in the identification of the debtor or the secured party is not required as long as the financing statement contains sufficient additional information to enable a prudent examiner to ascertain the exact state of affairs through further inquiry. *In Re Colorado Mercantile Co., supra; cf. In Re Platt,* 257 F.Supp. 478 (E.D.Pa.1966); *Stafford v. Admiral Credit Corporation,* 280 F.Supp. 818 (M.D.N.C.1968).

■■■ 12A Oklahoma Statutes § 9–402(1) does not expressly require the name of the debtor[2] to be given. However, it is clear, from the following cases, that the debtor's legal name must be given on a financing statement so that it can be filed and indexed in such a manner that a person searching the record under the debtor's legal name would be able to locate it.[3] *In Re Leichter,* 471 F.2d 785 (Second Cir. 1972); Leichter, a bankrupt, was doing business under the name "Landman Dry Cleaners". Leichter purchased equipment from Kenston on a conditional sales contract. Kenston filed a financing statement signed Landman Dry Cleaners by Matthew R. Leichter. The financing statement was indexed only under the name "Landman Dry Cleaners" and not under the name Leichter.[4] The court held that this filing was insufficient as an interested party searching under the name "Leichter" would not find the financing statement listed under "Landman". *In Re Thomas,* 466 F.2d 51 (Ninth Cir. 1972) the debtor's legal name was Thomas but on a financing statement filed by his creditor the

**1.** The Bankruptcy Court found that the subject financing statements were filed and indexed under the name "J. A. Fowler". This finding is apparently incorrect. The parties agreed in open Court that the 1971 and 1973 financing statements were not so filed and indexed, but were only filed and indexed under the name "Kaw Lake Cement".

**2.** Anderson states:

"UCC 9–402(1) does not expressly require that the name of debtor appear on the financing statement although the form proposed by Code 9–402(2) makes provision therefor and the requirement of the debtor's signature would likewise show the name of the debtor. The omission by the Code of an express requirement that the financing statement name the debtor may have been an inadvertent error in drafting or it may have been assumed that the requirement of a mailing address for the debtor would always require the inclusion of his name." 4 Anderson Uniform Commercial Code § 9–402:9.

**3.** Under 12A Oklahoma Statutes § 9–403(4) the filing officer is to index financing statements under the name of the debtor, hence the requirement of the debtor's name appearing somewhere in the financing statement is clear.

**4.** The case is somewhat ambiguous as it indicates that Kenston indexed the financing statement. It is the duty of the filing officer, not the creditor, to index financing statements.

debtor's name was listed only under the name West Coast Avionics, the debtor's trade name. The court held this financing statement to be insufficient to perfect the creditor's security interest as a potential creditor searching the record under the name Thomas would not receive notice of the security interest. *In Re Firth,* 363 F.Supp. 369 (M.D.Ga.1973) and *In Re Hill,* 363 F.Supp. 1205 (N.D. Miss.1973) the courts followed the *Leichter-Thomas* rule in holding that financing statements showing only the trade name of a debtor were insufficient to perfect a security interest as they would fail to give notice to a potential creditor searching the records under the legal name of the debtor. Finally, in *Siljeg v. National Bank of Commerce of Seattle,* 509 F.2d 1009 (Ninth Cir. 1975) the court held that filing a financing statement under an assumed trade name is effective unless it is misleading. The court relied on *In Re Platt, supra,* wherein the court held that a financing statement listing the name of the debtor as Platt Fur Co. was sufficient where the name of the debtor was Henry Platt as the name Platt Fur Co. was sufficiently related to the name of the debtor to require those who search the records to make further investigation.[5] From the above cases the general rule can be formulated that a financing statement, in order to perfect a security interest, must, in the case of an individual, or individuals, doing business under a trade name show the name of the individual legally responsible for the debt unless the trade name and the individual debtor's name are so similar that a prospective creditor, upon seeing the trade name in the records, would be alerted that there might be a prior security interest in the involved collateral.

■ A secured party does not bear the risk of improper filing or indexing as long as his conduct does not lead to the error on the part of the filing officer. 12A Oklahoma Statutes § 9–403(1) reads as follows:

> "Presentation for filing of a financing statement and tender of the filing fee or acceptance of the statement by the filing officer constitutes filing under this article."

12A Oklahoma Statutes § 9–403(4) states that:

> "A filing officer shall mark each statement with a consecutive file number and with the date and hour of filing and shall hold the statement for public inspection. In addition the filing officer shall index the statements according to the name of the debtor and shall note in the index the file number and the address of the debtor given in the statement."

The Uniform Commercial Code Comment to 12A Oklahoma Statutes § 9–407 reads in part that:

> " . . . under Section 9–403(1) the secured party does not bear the risk that the filing officer will not properly perform his duties: under that Section the secured party has complied with the filing requirements when he presents his financing statement for filing and the filing fee has been tendered or the statement accepted by the filing officer . . . "

Anderson states:

> "The secured party does not bear the risk of an improper filing or indexing by the filing officer, as long as the secured party has not by his own conduct caused the error by misleading the filing officer." 4 Anderson, Uniform Commercial Code, 2nd ed. 9–403:5.

This observation is supported by the decision in *In Re Royal Electrotype Corporation,* 485 F.2d 394 (Third Cir. 1973)

---

**5.** In reaching its decision the court made the following analysis which is helpful herein:

> "The 'true name' analysis is helpful, however, in the 'doing business as' cases because in such cases there are, in effect, two entities. The individual debtor still has personal transactions unrelated to his business activities. He pays rent, buys food and contracts debts in his own name. His personal creditors may not know of security interests filed under the name in which he does business."

holding that the secured party did not bear the risk of an indexing mistake by the filing officer and the decision in *In Re May Lee Industries, Inc.,* 380 F.Supp. 1 (S.D.N.Y.1974) holding the secured party not to be an insurer of proper filing and indexing by the filing officer.

■ There are two financing statements involved herein. The first, dated November 3, 1971, lists under the heading "Debtor(s)" "Kaw Lake Cement, Jerry A. Fowler & J. A. Fowler". The second, dated April 13, 1973, lists under the heading "Debtor(s)" "Kaw Lake Cement, Fowler, J. A., Partner Fowler, Jerry A., Partner". The Court finds and concludes that Appellant's first contention is without merit. Each of the financing statements names three debtors, Kaw Lake Cement, Jerry A. Fowler, and J. A. Fowler. This identification of debtors is not misleading.[6] The filing officer should have indexed these financing statements under each of these debtors names. The financing statements were submitted to the Clerk in proper form for J. A. Fowler to be indexed as a debtor.

## II

Appellant's second proposition on appeal is that two ineffective financing statements may not be construed together to create one sufficient financing statement. The gist of the Bankruptcy Judge's conclusion is that:

" . . . The filed financing statements of November 3, 1971 and of April 13, 1971 fairly put on notice any prudent examiner that he should check with the instant Bank for a possible security interest . . . ."

Thus, it is not necessary to the Bankruptcy Judge's conclusion that the two financing statements be construed together. Under the discussion contained above in Section I each of the financing statements is sufficient, standing alone, to give notice to a potential creditor of a possible outstanding security interest in the debtor's assets had they been properly indexed by the Clerk. Thus the Appellant's second assignment of error need not be reached.

## III

Appellant's third appellate contention is that the filing officer must index according to the debtor's *name* as it appears on the financing statement, and that he has no duty to index according to the debtor's *signature* as it appears on the financing statement. There appears to be some logic behind this assertion. But the point is not in this case as there is a clear designation of the name of the debtor in each financing statement apart from the signature portion of each financing statement.

## IV

Appellant raises two further issues in her briefs and oral arguments which were not designated in her statement of issues and which do not appear to have been raised in the Bankruptcy Court. Appellant asserts that the 1973 financing statement is insufficient to perfect a security interest as it does not contain the

---

**6.** In a reply brief Appellant argues that the financing statements are misleading as the name "Kaw Lake Cement" is listed first making it appear that the other parties listed signed only on the behalf of "Kaw Lake". Appellant relies on *In Re Firth, supra,* wherein a financing statement signed "National Photocopy Equipment Co. by James A. Firth" was held to be insufficient as the real debtor was Firth. The court concluded that the clear import of the signature was that Firth was signing only on behalf of "National". This case is clearly distinguishable from the facts herein. In this case, under the heading "debtor(s)", in each financing statement there are three distinct names and there is no indication therein that the Fowlers were acting on behalf of someone else. Though, the word "partner" follows each individual name in the 1973 financing statement this is not a listing as a debtor for some other entity as each partner is responsible for all partnership obligations. Under the heading of debtors the partnership name is listed and the individual partners are listed. The Clerk should have indexed all three listings and the appellee did not lose its security agreement because of the Clerk's omission.

debtors' addresses and that the security agreement underlying the 1973 financing statement does not grant Appellee a valid security interest in the Bankrupt's individual property which is listed as collateral therein. The Court declines to consider these issues as they have not been properly presented on this appeal. 11 U.S.C. § 67(c) reads in part:

"A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court upon petition filed within such ten-day period may for cause shown allow, filed with the referee a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who were represented at the hearing. *Such petition shall set forth* the order complained of and *the alleged errors in respect thereto* . . ." (Emphasis added)

Bankruptcy Rule 806 states that:

"Within ten days after filing the notice of appeal the appellant shall file with the referee and serve on the appellee a designation of the contents for inclusion in the record on appeal and *a statement of the issues he intends to present on appeal* . . ." (Emphasis added)

In proceedings under 11 U.S.C. § 67(c) courts have frequently refused to consider issues not designated in the petition. *In Re Unikraft Homes of Virginia, Inc.*, 370 F.Supp. 667 (W.D.Va.1974); *In Re Snow Camp Logging Company*, 168 F.Supp. 420 (N.D.Cal.1958); *In Re Moskowitz*, 63 F.Supp. 1000 (W.D.Ky.1946). Other courts have held that it is discretionary with the district court whether to consider issues not presented in the petition. *In Re Cedor*, 337 F.Supp. 1103 (N.D.Cal.1972). Another view is that the district court may consider any issue fairly presented by the record. *In Re Dunn*, 251 F.Supp. 637 (M.D.Ga.1966).

■ There is no indication that these issues were raised before or considered by the Bankruptcy Court. It would be improper for this Court to consider these issues for the first time on appeal.

■ However, if this determination of the Court is not correct and these issues should be considered it would hold against the Appellant on each. With regard to Appellant's argument that the 1973 financing statement is insufficient as it does not contain the debtors' addresses, while at least one court has indicated that the omission of an address for a debtor will render a financing statement insufficient to perfect a security interest, *In Re Smith*, 205 F.Supp. 27 (E.D.Pa.1962), two other courts, including our Circuit in a case applying Wyoming law, (there does not appear to be an Oklahoma decision on point) have held that the omission of a debtor's address does not, as a matter of law, prevent a financing statement from perfecting a security interest. *In Re French*, 317 F.Supp. 1226 (E.D.Tenn.1970); *Rooney v. Mason*, 394 F.2d 250 (Tenth Cir. 1968). Clearly, the view that the omission of a debtor's address from a financing statement does not prevent it from perfecting a security interest is the better view. Anderson, in speaking of incorrect addresses, but which reasoning would equally well apply to omitted addresses, states:

"In considering the significance of a wrong address of the debtor, it is important to bear in mind that the notice motive of the filing is not as an element of discovery in aid of execution but to protect lenders and sellers dealing with the debtor or buyer purchasing the collateral from the debtor. It would seem that as to them, the statement in the financing statement of the debtor's address is immaterial beyond raising a question in their minds as to his identity. Such persons will undoubtedly have a current address of the debtor and the only effect of a former address in the financing statement is to raise a question whether the debtor they are dealing with and the debtor named in the financing statement are the same person. Since such third persons are dealing directly

with the debtor there will be no difficulty in obtaining an answer to this question should it arise."

4 Anderson Uniform Commercial Code, 2nd ed. 9–402:24. Moreover, as Judge Doyle indicated in *In Re Colorado Mercantile, Co., supra*, perfect accuracy in financing statements is not required as long as the statement contains sufficient additional information to permit an interested party to ascertain the exact state of affairs through further inquiry. The system is designed to notify and put interested persons on guard. The omission of the debtor's address from a financing statement does not necessarily defeat this purpose. In this case the financing statements both contain the creditor's address. Further inquiry could have been made through the creditor, or, as Anderson points out, an interested party should know the debtor through the debtor himself. Moreover, the 1971 financing statement contains the debtor's address.

Appellant's final contention is that the security agreement which stands behind the 1973 financing statement does not grant the Appellee a security interest in the Bankrupt's individual assets listed therein as collateral. The subject security agreement is included in the record. The tenor of this instrument is that there is granted to the Appellee a security interest in certain described collateral. Listed as collateral are assets of Kaw Lake Cement and assets belonging to the J. A. Fowler Construction Company (a sole proprietorship owned by J. A. Fowler). The instrument is executed Kaw Lake Cement by Jerry A. Fowler, Partner, J. A. Fowler, Partner. Thus, the gist of Appellant's argument is that in an instrument in which a partnership puts up its assets as collateral to secure a debt a partner may not also pledge his own individual assets as collateral for the partnership debt if the instrument is executed by the individual partner only in his partnership capacity. In view of the nature of the partnership entity, the Court finds this argument to be without merit.

54 Oklahoma Statutes § 215 provides that partners are jointly liable for debts and obligations of the partnership, but that any partner may enter into a separate obligation to perform a partnership contract. In the ordinary course of events a partner's individual liability on a partnership debt accrues only after partnership assets are depleted. *Fowler v. Brooks*, 193 Okl. 580, 146 P.2d 304 (1944). In this contract the Bankrupt merely put up some of his individual assets as listed therein, which could be reached any way, as security for the partnership debt. Clearly, the partnership entity could not pledge the individual partner's assets as collateral for its debt, but the individual partner, would have capacity to pledge his own assets as collateral for a partnership debt if he so desired. To hold that in order to do so a partner would have to execute an instrument both as a partner and as an individual would be a triumph of form over substance. Clearly, a partner can bind both his partnership and himself and can bind partnership property and his individual property to the performance of an obligation. This is inherent in the nature of a partnership which has only to a limited extent separate legal entity from the partners and whose members are individually liable on the debts of the collective partnership entity. As a partnership is as much a collection of personally liable individuals as a separate legal entity, an individual partner should be able to act both for himself and his partnership at the same time.

Affirmed.