In re David Carlton ADAMS, d/b/a Music City, (Valdosta and Thomasville), d/b/a Bargain Bazaar (Thomasville), SSN: 253–02–9775 I.D. NO. 58–1581077 (Adams Music City) I.D. NO. 58–1631535 (Bargain Bazaar), Debtor.

Walter W. KELLEY, Trustee, Plaintiff,

v.

CITIZENS & SOUTHERN NATIONAL BANK OF THOMASVILLE, Defendant.

Bankruptcy No. 86–70310–VAL.
Adv. No. 88–7019–VAL.

United States Bankruptcy Court,
M.D. Georgia,
Valdosta Division.

June 15, 1989.

G. Frank Nason, IV, Albany, Ga., for plaintiff.

Elliott P. McCollum, Jr., Thomasville, Ga., for defendant.

Walter W. Kelley, Albany, Ga., Chapter 7 Trustee.

## MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

### STATEMENT OF THE CASE

On May 5, 1989, a pre-trial conference was held on the complaint of the Trustee to set aside a preference and turnover property of the estate. There being no facts in dispute, the court invited both parties to submit briefs on the issue of whether the transfer of $15,582.76 to Citizens & Southern National Bank of Thomasville (hereinafter "Defendant") was a preferential transfer pursuant to § 547(b) of the Bankruptcy Code.[1] This court, having considered the briefs of counsel, now publishes its Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Prior to the filing of his Chapter 7 bankruptcy petition on November 25, 1986, the Debtor executed in the name of "Adams Music City" a single payment note of $20,-000.00 in favor of Defendant on May 10, 1984. On May 14, 1985, the single payment note was converted into installment

---

**1.** 11 U.S.C.A. § 547(b) (West 1979 & Supp.1989).

loan number 238–225–032193. Defendant took a security interest in all the furniture, fixtures, inventory, and accounts receivable of Adams Music City along with the personal guarantee of Carlton T. Adams, the Debtor's father. Defendant filed a UCC–1 Financing Statement in the public records of Thomas County, in an effort to evidence the above security interest. The UCC–1 Financing Statement listed the Debtor's name only as Adams Music City, an unregistered trade-name.

Subsequently on August 26, 1986, a contract was executed between the Debtor and purchaser, Wayne Johnson, for the sale of the business known as Adams Music City for a purchase price of $19,000.00. Pursuant to the terms of the sales contract, the purchaser deposited the purchase price into the trust account of Best & Gehrke, the attorneys handling the closing. According to the terms of the contract, Best & Gehrke disbursed to Defendant $15,582.76. The Defendant applied said amount to the Debtor's indebtedness owed to Defendant and as a result of said payment, the Defendant cancelled the note. The Defendant received said payment on August 29, 1986, and the posting date for the check was September 2, 1986. As previously stated, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code on November 25, 1986. Plaintiff was duly appointed Trustee of the bankruptcy estate.

## CONCLUSIONS OF LAW

Plaintiff seeks to avoid the transfer of $15,582.76 to Defendant as a preferential transfer of property of the Debtor pursuant to § 547(b) of the Bankruptcy Code.[2]

Plaintiff contends that the elements of a preferential transfer pursuant to § 547(b) have been satisfied. Payment was made from the trust account of Best & Gehrke for the benefit of Defendant, and as a result Defendant released its security interest in the store inventory. As to the requirement that payment was made on account of an antecedent debt, the initial loan was made on May 10, 1984, and was subsequently converted into an installment loan on May 14, 1985. The contract for sale from which the purchase price was obtained was executed on August 26, 1986. Payment was received by Defendant on August 29, 1986.

Section 547(f) of the Bankruptcy Code[3] provides that the Debtor is presumed to be insolvent on and during the 90 days immediately preceding the date of filing. In the instant case, the date of filing was November 25, 1986. Therefore, because the Defendant has brought forth no evidence to rebut the insolvency presumption, the Debtor is deemed to be insolvent during the 90 days before filing. The next element of proof requires that the transfer be made on or within 90 days before the date of filing of the petition. In the instant case, the money was deposited into the trust account on the date of the August 26, 1986, purchase. The Defendant did not receive the payment until August 29, 1986, and the posting date for the check was September 2, 1986. The Eleventh Circuit has held that the critical date for determining whether an avoidable preference has taken place in the transfer of property is the date when the check is honored by the drawee bank. *Nicholson v. First Investment Company*, 705 F.2d 410 (11th Cir.

---

2. 11 U.S.C.A. § 547(b) (West 1979 & Supp.1989).
   (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was insolvent;
   (4) made—
   (A) on or within 90 days before the date of the filing of the petition; or

   (B) between ninety days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider; and
   (5) that enables such creditor to receive more than such creditor would receive if—
   (A) the case were a case under chapter 7 of this title;
   (B) the transfer had not been made; and
   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

3. 11 U.S.C.A. § 547(f) (West 1979).

1983); *Bethlehem Steel Corp. v. Tidwell,* 66 B.R. 932 (M.D.Ga.1986); *See also Matter of Sweetapple Plastics, Inc.,* 77 B.R. 304 (Bankr.M.D.Ga.1987). Therefore, since the posting date of the check (*i.e.* the date the check was honored by the drawee bank) was September 2, 1986, this date falls well within the 90–day period immediately preceding the filing of the bankruptcy petition.

█ The remaining element of § 547(b) of the Bankruptcy Code[4] to be satisfied is whether the payment received by Defendant enabled the Defendant to receive more than such creditor would receive if the case were a case under Chapter 7, the transfer had not been made, and the creditor received payment of such debt to the extent provided by the Bankruptcy Code. The Defendant contends that it is a secured creditor by reasons of its UCC–1 Financing Statement filed in the name of Adams Music City.

Under Georgia law, O.C.G.A. § 11–9–402,[5] a financing statement is sufficient if: (1) it gives the name of the debtor and secured party; (2) it is signed by the debtor; (3) it gives an address of the secured party from which information concerning the security interest may be obtained; (4) it gives a mailing address of the debtor; and (5) it contains a statement indicating the types or describing the collateral. In the instant case, the business designation of the Debtor was used on the financing statement rather than the true name of the Debtor, *i.e.,* David Carlton Adams. The issue of perfection turns upon whether this error is seriously misleading.

This issue has been addressed by the District Court for the Middle District of Georgia in the case of *Citizens Bank v. Ansley,* 467 F.Supp. 51 (M.D.Ga.1979). This court is bound by the decision in *Ansley* which is almost exactly on point. The financing statement in the *Ansley* decision was listed in the name of Ansley Farms as the debtor, although the true debtor was Emory Ansley. The District Court in *Ansley* held this error was seriously misleading so as to render the creditor's security inter-

est unperfected. The court looked at other jurisdictions which have interpreted the same statutory language as found in Georgia's version of the Uniform Commercial Code and adopted a rule "that a financing statement must

'... in the case of an individual, or individuals, doing business under a trade name show the name of the individual legally responsible for the debt unless the trade name and the individual debtor's name are so similar that a prospective creditor, upon seeing the trade name in the records, would be alerted that there might be a prior security interest in the involved collateral.'"

*Ansley,* 467 F.Supp. at 53 (quoting *Matter of Fowler,* 407 F.Supp. 799, 803 (W.D.Okla. 1975)).

Therefore, for the reasons set forth in *Ansley,* this court finds that Defendant's security interest is not perfected and the debt owed to the Defendant was unsecured. Because Defendant's debt was unsecured, there would have to be sufficient assets to provide a one hundred percent distribution to unsecured creditors in order for Defendant to have received no more than it would have received in a Chapter 7 if the transfer had not been made, and distribution had been made in accordance with the Bankruptcy Code. This court finds the Trustee has met his burden of proof with respect to this particular element, because the schedules show there would be insufficient assets for a one hundred percent distribution to unsecured creditors.

█ Defendant's final argument is that the payment was made by a third party, and therefore should not be set aside as a preference. This court is not persuaded by Defendant's argument, as a third party served merely as an agent for the Debtor in the distribution of the funds. The essential factor for a preference action is that the Debtor have an interest in the property transferred so that the estate is thereby diminished. *See Coral Petroleum, Inc. v.*

**4.** 11 U.S.C.A. § 547(b) (West 1979 & Supp.1989).

**5.** O.C.G.A. § 11–9–402 (Supp.1988).

*Banque Paribas–London,* 797 F.2d 1351 (5th Cir.) *reh'g denied,* 801 F.2d 398 (5th Cir.1986). In the instant case, it is clear that the funds in question would have been property of the estate. All of the assets of the Debtor belonged to the Debtor in his individual capacity. The payment for these assets was deposited in the trust account of the attorneys handling the closing. These attorneys served as merely agents in the transfer of said funds to the Defendant.

Accordingly, the Trustee is entitled to avoid the entire amount transferred to the Defendant pursuant to the purchase of Adams Music City as an avoidable preference pursuant to § 547(b) of the Bankruptcy Code.[6] The amount recoverable by the Trustee is the amount transferred in the sum of $15,582.76 plus the lawful rate of prejudgment interest from the date of filing of the Adversary Proceeding.

---

6. 11 U.S.C.A. § 547(b) (West 1979 & Supp.1989).